UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-cv-80839-DMM

MELODY A. KLOEPFER

    Plaintiff,

vs.

THE PALM BEACH STATE COLLEGE
FOUNDATION, INCORPORATED, a Florida Not
for Profit Corporation d/b/a PALM BEACH STATE
COLLEGE,

    Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, WITH PREJUDICE, AND MEMORANDUM OF LAW IN SUPPORT THEREOF AND MOTION TO STRIKE PRAYER FOR RELIEF**

Defendant, The District Board of Trustees of Palm Beach State College, Florida (improperly named The Palm Beach State College Foundation, Incorporated, a Florida Not for Profit Corporation d/b/a Palm Beach State College) (hereinafter the "College"), pursuant to Fed. R. Civ. P. 12(b)(6) and Rule 7.1 of the Local Rules of the District Court for the Southern District of Florida, moves for an order dismissing Plaintiff's Complaint with prejudice, (DE 1), and in support states:

**INTRODUCTION**

Plaintiff's Complaint is essentially a grade appeal in which she asks this Court to second-guess her professor's scoring on a single examination in the Respiratory Care Program at the College. Plaintiff alleges that after "express[ing] some of her concerns" to another professor about Professor Sheriff Nartey, Professor Nartey issued her a failing grade on an exam. *See* DE 1, ¶¶ 12-15. Plaintiff first requested reconsideration to Professor Nartey himself, who explained to Plaintiff

in detail why her grade was justified. *Id.* at ¶ 16. Plaintiff then asked to meet with Professor Nartey along with another professor in the Program, and an Associate Dean of the College, all of whom agreed that Plaintiff's examination grade should be upheld. *Id.* at ¶¶ 20-21. Plaintiff's third appeal of her grade on the examination was a "Final Course Grade Appeal," but there is no detail provided in the Complaint as to whom this third appeal was directed. *Id.* at ¶ 23. Importantly, there is no allegation that Plaintiff made any mention of sexual harassment, gender discrimination, or retaliation throughout the first three grade appeals. *Id.* at ¶¶ 16-22.

Plaintiff finally alleges that she claimed that her grade was a result of retaliation in her *fourth* attempt to appeal her examination grade on June 12, 2021. *Id.* at ¶ 25. After the College found that no action was warranted based on Plaintiff's allegations against Professor Nartey, and upheld her grade, the College offered to allow Plaintiff readmission to the Program. *Id.* at ¶¶ 26-28. She declined. *Id.* at ¶ 27. Plaintiff made a fifth grade appeal to the United States Department of Education Office for Civil Rights. *Id.* at ¶ 29. Plaintiff now makes her sixth appeal of her grade to this Court.

Plaintiff's claim for retaliation fails for several reasons. First, her belief that Professor Nartey was engaging in gender discrimination and/or sexual harassment was not objectively reasonable, and she therefore *could not have engaged in any "protected activity"* by reporting it to another professor. Plaintiff *alleges* that Professor Nartey "*regularly and repeatedly* raised his voice toward female students," "advised female students to whisper in his ear (*plural*)," "conducted exams alone with a female student (*plural*)," "bragged to female students about his successful business while alone with those students (*plural*)," and "openly stared at female student's [sic] backsides (*plural*)." *Id.* at ¶ 10 (emphasis added). Plaintiff then alleges she reported

2

Nartey's inappropriate conduct by "submitting a written complaint to Ms. Stephanie Parlamento."

*Id.* at ¶¶ 12-14. Plaintiff states that she wrote the following:

> Specifically, on May, 2, 2021, KLOEPFER expressed her concerns to Ms. Partamento and described how Professor Nartey would make comments to female students (*plural*) while he was alone with them during exams (*plural*). She also noted that Professor Nartey would *constantly* and obviously gaze upon female students backsides or try to brag about his "Amazon business" that was making him millions of dollars in an attempt to impress his female students.

*Id.* at ¶ 13 (emphasis added). However, Plaintiff's recitation in the Complaint of her *actual* "written complaint" to Ms. Parlamento is misleading - at best - in an attempt to inflate her claims for the purpose of this lawsuit. *See* May 2, 2021 "written complaint" to Ms. Stephanie Parlamento, attached hereto as Exhibit A.[1] Plaintiff's *actual* "written complaint" to Ms. Parlamento states that Professor Nartey asked *one* student to "whisper the answers in his year [sic]," told *one* student about his Amazon business, and that she *once* observed him "looking at a student's butt." *Id.* The Plaintiff further acknowledges "the behavior is subtle but I am concerned." *Id.* This is the same behavior that Plaintiff premises her federal Title IX lawsuit upon. The "written complaint" is insufficient as a matter of law in establishing a protected activity. *Id.* Nevertheless, if this Court decides to address the College's Motion to Dismiss based solely on its examination of Plaintiff's Complaint the outcome is the same. Plaintiff's allegations fall far below the standard for actionable sexual harassment under Title IX, which must "go far beyond offensiveness to rise to the level of objective illegality; they must be frequent, severe, physically threatening, humiliating, or offensive to such a degree that it interferes with the complainant's performance." She therefore could not have had an objectively reasonable belief that any Title IX violation had occurred, and

---

[1] This Court may consider the attached because the document's contents are alleged in a complaint. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)

could not have engaged in "protected activity" under Title IX. Because of this, her retaliation claim fails as a matter of law.

Second, Plaintiff's claim fails because even if she alleged that Professor Nartey knew of her complaint (which she did not), the College is not vicariously liable for an employee's actions under Title IX. Further, Plaintiff has not alleged that anyone with decision-making authority to bind the College was made aware of the purported retaliation at the time they denied her appeals to change her grade. As such, Plaintiff's allegations *cannot establish any causal connection between her complaint and the denials of her grade appeals*.

Next, Plaintiff's Complaint must be dismissed for *failure to sue the proper party*. Here, a legal action has been brought against a member of the Florida College System and, therefore, must be brought against The District Board of Trustees for that member institution.

Finally, Plaintiff's *Complaint fails to allege compliance with mandatory pre-suit notice requirements under 768.28(6)*. Consequently, Plaintiff's Complaint must be dismissed.

## MEMORANDUM OF LAW

### I. Legal Standard on Motion to Dismiss

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a complaint "must consist of more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Lattimore v. Wells Fargo Bank, N.A.*, 590 Fed. Appx. 912, 913 (11th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). A "'formulaic recitation of the elements of a cause of action will not do.'" *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). The Court must accept the plaintiff's well-pleaded facts as true but need not

accept mere legal conclusions. *Brinson v. Welsh*, No. 16-17487, 2017 WL 4176209, at *2 (11th Cir. Sept. 21, 2017) (citing *Iqbal*, 556 U.S. at 678).

"Plausibility is the key, as the 'well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'" *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (quoting *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009), in turn quoting *Twombly*, 550 U.S. at 570). "In short, the complaint must not merely allege a misconduct, but must demonstrate that the pleader is entitled to relief." *Gavilan v. Balans, L.C.*, No. 14-22791-CIV, 2014 WL 6979625, at *1 (S.D. Fla. Dec. 9, 2014) (citing *Iqbal*, 556 U.S. at 678).

## II. Plaintiff Fails To State A Claim For Retaliation Under Title IX Because She Did Not Engage In Any Protected Activity

Title IX guarantees that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Retaliation claims under Title IX are analyzed under the framework for claims under Title VII of the Civil Rights Act of 1964 ("Title VII"). Under Title VII, "the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse ... action; and (3) that there is some causal relation between the two events." *Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1363 (11th Cir. 2007) (per curiam). An individual engages in protected expression when she opposes practices made unlawful by the relevant statute (the opposition clause) or participates in any manner in an investigation under the relevant statute (the participation clause). *Clover v. Total Sys. Servs., Inc.,* 176 F.3d 1346, 1350 (11th Cir. 1999).

Opposition must be based upon a good faith belief that is objectively reasonable under existing substantive law. *Id.* at 1351. Under Title VII, we examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

5

offensive utterance; and whether it unreasonably interferes with [an individual's] performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S. Ct. 367, 371, 126 L.Ed.2d 295 (1993).

Here, the allegations contained within Plaintiff's Complaint fail to establish that she engaged is a statutorily protected expression. If there is any doubt, the Court need only look at Exhibit "A" that documents Plaintiff's "written complaint to Stephanie Parlamento" which Plaintiff references and relies upon in supporting her Title IX retaliation claim.

### a. Plaintiff Did Not Have An Objectively Reasonable Belief That A Title IX Violation Had Occurred Where The Conduct Fell Far Below The Legal Standard For Actionable Sex Discrimination

One who seeks protection for opposing unlawful practices must have a good faith, reasonable belief that the conduct opposed is unlawful. *Little v. United Techs., Carrier Transicold Div.,* 103 F. 3d 956, 960 (11th Cir. 1997). The objective reasonableness of a belief that the complained-of conduct was unlawful must be measured against existing substantive law. *See Harper v. Blockbuster Entm't Corp.*, 139 F. 3d 1385, 1388 n.2 (11th Cir. 1998) (failure to charge the plaintiff who opposes a practice with substantive knowledge of the law "would eviscerate the objective component of our reasonableness inquiry").

Under the established substantive law, harassing conduct does not constitute actionable discrimination unless the conduct is "sufficiently severe or pervasive" to alter the conditions of the victim's employment and create an abusive working environment. *Mendoza v. Borden, Inc.,* 195 F. 3d 1238, 1245 (11th Cir. 1999) (emphasis added). In considering whether the complained-of conduct meets the objective test, the court must consider (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the [victim]'s performance. *Id.* at 1246. These factors, similarly, are examined when determining whether a Title

IX plaintiff's opposition was "based upon a good faith belief that is objectively reasonable under existing substantive law." *Kocsis,* 788 Fed. Appx. at 686. "'[S]poradic use of abusive language, gender-related jokes, and occasional teasing' will not constitute a Title VII violation. *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)).

Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993) (emphasis added).

As demonstrated *infra,* Plaintiff allegations fail to raise to the level of an actionable Title IX Complaint.

### b. Plaintiff's Complaint Does Not Describe Conduct That Was Frequent, Severe, Physically Threatening, or Humiliating

Here, the "harassment" described in the Complaint falls so far below what courts have held constitutes an abusive working environment, that Plaintiff could not have had an objectively reasonable belief that any Title IX violation had occurred. Without an objectively reasonable belief, Plaintiff did not engage in any protected activity. The totality of the "harassment" described in the Complaint is the following:

   a. Professor Nartey regularly and repeatedly raised his voice toward female students in front of the rest of the class;

   b. Professor Nartey advised female students to "whisper answers in his ear";

   c. Professor Nartey conducted exams alone with a female student, who later reported feeling uncomfortable with the interactions;

> d. Professor Nartey bragged to female students about his successful business while alone with those students; and
>
> e. Professor Nartey openly stared at female student's [sic] backsides, which was observed directly by KLOEPFER.

DE at ¶ 10.

If there be any doubt that Plaintiff failed to engage in protected activity – as opposed to a simple grade appeal – the Court need only look at Plaintiff's actual "written complaint to Ms. Parlamento":

> In lab on Tuesday, Professor Nartey made a *comment to a student telling her she could 'whisper the answers in his year'*…Then, the same student told me (the other day while studying) when she was alone with him during the midterm, he was *bragging to her about his amazon business and how he's earning millions* (like he is trying to impress her). I have *caught him looking at a student's butt* too and he saw me catch him.

*See* Exh. A (emphasis added).

> Plaintiff goes on to write that "[e]veryone will probably be ok but he is a bit creepy..[a]t this point the behavior is subtle but I am concerned. *Id.* ²

While Plaintiff declined to attach the verbatim "written complaint" to her Complaint (for obvious reasons), this Court may consider the document where it is both central to Plaintiff's claim and its contents are undisputed.³ *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). The Eleventh Circuit Court of Appeals held the following in *Day*:

> [T]he court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, "undisputed"

---

² Subtle behavior is inapposite to a Title IX cause of action or, for that matter, any action for discrimination or harassment.

³ The Court may consider documents attached to a motion to dismiss where the document is central to the plaintiff's claim, and its authenticity is undisputed… "[W]hen the exhibits [attached to a pleading] contradict the general and conclusory allegations of the pleading, the exhibits govern." *Gomez v. Miami-Dade Cnty.*, 563 F. Supp. 3d 1211, 1217 (S.D. Fla. 2021).

> means that the authenticity of the document is not challenged. [*Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir.2002)]. Our prior decisions also make clear that a document need not be physically attached to a pleading to be incorporated by reference into it; *if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement* imposed in *Horsley*.

*Day*, 400 F.3d at 1276 (emphasis added)

It is clear that Plaintiff's actual "written complaint" to Ms. Parlamento did not describe a hostile environment where she claims that he told <u>one</u> student to whisper answers in his ear on <u>one</u> date, bragged to that <u>one</u> unnamed student about his business during an exam, and allegedly looked at one student's backside. *See* Exh. A. Plaintiff states herself that "the behavior [was] subtle." *Id*. Plaintiff's own words demonstrate clearly that the behaviors she reported were not frequent, severe, physically threatening or humiliating, and there is no indication that they interfered with the unnamed victim's performance. As such, the behavior she reported cannot legally constitute a hostile or abusive work environment. *Mendoza*, 195 F. 3d at 1245.

Even if this Court only considered Plaintiff's allegations within the Complaint, those behaviors still do not rise to the level of an abusive environment. Rather, four out of the five behaviors described cannot be considered gender discrimination or sexual harassment, because they are not gender-related or sexual in nature. Acts complained of "must be of a sexual or gender-related nature… before they are considered in determining whether the severe or pervasive requirement is met." *Tatt v. Atlanta Gas Light Co.*, 138 F. App'x 145, 148 (11th Cir. 2005).

In *Tatt*, an employee claimed retaliation under Title VII based on a complaint she made that her manager, on a weekly basis, would "pretend to unzip his pants… and urinate all over the paperwork" that she presented to him, and yell across the office to her, "Diane,… [w]hy don't you take off early and go on down to the American Legion and pull on some long necks." *Tatt*, 138 F. App'x at 147. The Eleventh Circuit Court of Appeals held that where these actions and comments

were not sexual in nature, the Plaintiff did not have an objectively reasonable belief that they constituted sexual harassment. *Id*. If these acts could not reasonably be considered sexual or gender-related, there is no way that the acts described in the instant Complaint can. Raising one's voice, asking a student to whisper an answer so that others cannot hear it, conducting practical exams with individual students, and bragging about a successful business venture cannot reasonably be considered sexual or gender-related in nature.

The only action described in the Complaint that might be considered sexual in nature is the misleading allegation that Professor Nartey "constantly" stared at female students' backsides. However, this one alleged behavior is legally insufficient to give Plaintiff a reasonable belief that actionable discrimination had taken place, especially where there is no indication that it was so severe that any "victim" of this alleged behavior felt physically threatened, humiliated, or that it interfered with anyone's education or performance in the course. *Kocsis v. Fla. State Univ. Bd. of Trustees*, 788 F. App'x 680, 687 (11th Cir. 2019) ("[u]nder this Court's substantive law, comments and language must go far beyond offensiveness to rise to the level of objective illegality; they must be frequent, severe, physically threatening, humiliating, or offensive to such a degree that it interferes with the complainant's performance.").

In *Kocsis*, the Eleventh Circuit Court of Appeals affirmed the District Court of the Northern District of Florida's rejection of the plaintiff's claim that she had engaged in protected activity under Title IX when she complained about her professor's behavior to another professor, and alleged that her grades subsequently dropped. The statements plaintiff complained of included: "[W]hether she is pretty or not, that could be an argument," "You can't expect to get by on your looks forever," "[A double-barreled question is] like saying Ellie ... is not only short, Ellie is short and ugly," "You're black; you voted for Obama," "Oh Javier, you're Hispanic, you must go to

church somewhere." *Kocsis*, 788 F. App'x 680, 682. The Court explained that, when the plaintiff's allegations were measured against existing substantive law, it was clear that she could not have had an objectively reasonable belief that the conduct was unlawful. *Kocsis*, 788 F. App'x 680, 687.

Similarly, here, the complained-of behaviors fall well below the level of conduct that can be considered "severe and pervasive" to constitute a Title IX violation where the only listed allegation that might be considered sexual in nature was not "frequent, severe, physically threatening, humiliating, or offensive to such a degree that it interfere[d] with the complainant's performance." *Id.*

In *Mendoza v. Borden, Inc.,* the Eleventh Circuit provided myriad examples of behavior *much* more egregious than that described by Plaintiff that did not rise to the level of severity or pervasiveness to constitute a Title VII violation:

- *Shepherd v. Comptroller of Public Accounts of Texas,* 168 F.3d 871, 872–75 (5th Cir.1999) (holding that several incidents over a two-year period, including comment "your elbows are the same color as your nipples," another comment that plaintiff had big thighs, touching plaintiff's arm, and **attempts to look down the plaintiff's dress**, were insufficient to support hostile-environment claim);
\*   \*   \*
- *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 768 (2d Cir.1998) (holding that statement that plaintiff had the "sleekest ass" in office plus **single incident of "deliberately" touching plaintiff's "breasts with some papers that he was holding in his hand"** were insufficient to alter the terms or conditions of the plaintiff's employment);

- *Adusumilli v. City of Chicago,* 164 F.3d 353, 357 (7th Cir.1998) (holding actions insufficient to support hostile environment claim where co-employees teased plaintiff, made sexual jokes aimed at her, asked her what "putting one rubber band on top and another on the bottom means," commented about her low neck tops, **repeated staring at her breasts with attempts to make eye contact**, and **four incidents of touching her arm, fingers or buttocks**);

- *Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1365–66 (10th Cir.1997) (holding five "sexually-oriented, offensive" statements over sixteen months insufficient to show hostile environment, even though one of the harasser's statements occurred while he put his arm around plaintiff, looked down her dress and said, "well, you got to get it when you can");

11

\* \* \*

- *Black v. Zaring Homes, Inc.,* 104 F.3d 822, 823–24 (6th Cir.1997) (reversing jury verdict and finding conduct was "sex-based" but insufficiently severe or pervasive to state actionable claim, where conduct over a four-month period involved repeated sexual jokes; one occasion of **looking plaintiff up and down**, smiling and stating, there's "Nothing I like more in the morning than sticky buns"; suggesting land area be named as "Titsville" or "Twin Peaks"; asking plaintiff, "Say, weren't you there [at a biker bar] Saturday night dancing on the tables?"; stating, "Just get the broad to sign it"; telling plaintiff she was "paid great money for a woman"; laughing when plaintiff mentioned the name of Dr. Paul Busam, apparently pronounced as "bosom");

- *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430 (7th Cir.1995) (holding insufficiently severe or pervasive to support a hostile-environment claim nine instances of offensive behavior over seven months including repeated references to plaintiff as a "tilly" and a "pretty girl" and one instance of simulated masturbation);
\* \* \*
- *Weiss v. Coca–Cola Bottling Co. of Chicago,* 990 F.2d 333, 337 (7th Cir.1993) (holding plaintiff's claims—supervisor repeatedly asked about her personal life, told her how beautiful she was, asked her on dates, called her a dumb blonde, put his hand on her shoulder at least six times, placed "I love you" signs in her work area, and **tried to kiss her once at a bar and twice at work**—were not sufficient for actionable sexual harassment).

*See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246–47 (11th Cir. 1999) (emphasis added).

There is only one example of behavior alleged in the Complaint that is arguably sexual in nature - Plaintiff's subjective perception that she saw Professor Nartey gaze at unnamed others' backsides. This allegation pales in comparison to the actions that courts have held were *not* severe or pervasive enough to constitute a hostile environment- including repeated incidents of staring at victims' breasts and touching a victim's buttocks. *See id.* at 1246-47.

### c. Plaintiff Does Not, and Cannot, Allege That The Conduct Described In Her Complaint Interfered With Any "Victim's" Performance

It is important to note that Plaintiff never claimed to be *the victim* of the conduct she described in her lawsuit or her "written complaint" upon which her lawsuit is premised. Rather, all of the purported "discrimination" and "sexual harassment" was allegedly directed at unnamed

"female students." *See* DE ¶ 10. Though Plaintiff alleges – in conclusory fashion - that "she also experienced much of this gender discrimination first-hand" *(Id.* at ¶ 11), there are no facts to demonstrate what behavior Plaintiff actually experienced. Likewise, Plaintiff's actual "written complaint" states her concern was not for herself, but for other "young and pretty female students." *See* Exh. A. Accordingly, when considering the fourth prong of the test for actionable discrimination under Title IX, this Court must look to whether the unnamed victims believed that their performance in class was affected, rather than Plaintiff's perception.

Where there is no allegation that the unnamed female "victims" of this alleged behavior even subjectively perceived that the environment was abusive, there can be no Title IX violation. *See Harris*, 510 U.S. at 370. Where there is no good faith, objectively reasonable belief in a Title IX violation, there can be no protected activity, and thus no retaliation. *Kocsis*, 788 F. App'x 680, 687.Here, measured against existing substantive law, it is clear that Plaintiff did not have an objectively reasonable belief that the conduct she allegedly complained about was unlawful. *Id*. Consequently, Plaintiff's Complaint should be dismissed with prejudice as there are no set of facts that Plaintiff can allege to state a cognizable Title IX cause of action.

## III.   Plaintiff Fails To State A Claim For Retaliation Under Title IX Because She Has Not Alleged Actual Knowledge Of Her Complaint By A Decision-Maker With Authority To Bind The College Who Took Any Alleged Adverse Action Against Her

Even if Plaintiff's allegations were sufficient to establish retaliation for protected activity by Professor Nartey (which they are not), the College would not be liable for his actions. The United States Supreme Court has made clear that retaliation under Title IX must be by the *funding recipient* (the educational institution or school district) and not simply by an individual. *Jackson v. Birmington Bd. Of Educ.*, 544 U.S. 167 (2005). The Court explained: "We conclude that when <u>a funding recipient</u> retaliates against a person because he complains of sex discrimination, this

constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX." 544 U.S. at 175 (emphasis added). The Court further explained that "Title IX's enforcement scheme also depends on individual reporting *because individuals and agencies may not bring suit under the statute unless the recipient has received 'actual notice' of the discrimination.*" *Id.* at 181 (emphasis added).

As such, in order to state a claim for retaliation under Title IX, Plaintiff must allege that the College (as opposed to Professor Nartey) intentionally retaliated against her because she complained about gender or sexual discrimination. Plaintiff cannot do this where she has not alleged that anyone at the College was aware of her belief that her exam grade was a result of retaliation when they upheld that grade.

Plaintiff alleges that she "sought to retake the final exam" (DE at ¶ 19), and that on May 12, 2021, she "had a meeting to discuss the failing grade" with three faculty members (*Id.* at ¶ 20). Plaintiff alleges that the three faculty members she met with refused to change her exam grade. *Id.* at ¶ 21. Plaintiff does not allege that she told these faculty members that she believed her exam grade was a result of retaliation by Professor Nartey during that meeting or on any date prior. Plaintiff does not allege that any of the three faculty members were decision-makers with authority to bind the College.

After Plaintiff alleges that the three faculty members declined to change her grade, she alleges that she filed a "Final Course Grade Appeal" on May 25, 2021. *Id.* at ¶ 23. There is still no allegation, up to this point in time, that Plaintiff informed anyone at the College that she believed her exam grade was a result of any retaliation. It was not until June 25, 2021, a full month after her "Final Course Grade Appeal," that Plaintiff alleges she informed the College that she believed that the exam grade was a result of retaliation. *Id.* at ¶ 25. Based on Plaintiff's allegations, she has

not plausibly alleged that any decision-maker at the College was informed about the alleged retaliation when they declined to change her exam grade or allow her to re-take the exam a month prior.

In *Davis v. Folsom Cordova Unified Sch. Dist.,* 674 Fed. Appx. 699 (9th Cir. 2017), the Ninth Circuit affirmed dismissal of a Title IX retaliation claim for this very reason:

> [T]here was no error in dismissing Davis's Title IX retaliation claim. … Davis has failed to allege that the District as opposed to an individual, retaliated against him. *See Jackson v. Birmingham Bd. of Educ*., 544 U.S. 167. 179, 184, 125 S. Ct. 1497, 161 L.Ed. 2d 461 (2005); see also Gebser v. Lago Vista Indep. Sch. Dist*., 524 U.S. 274, 285, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998) (plaintiff may not recover against school district for alleged Title IX violations by employee based solely on principles of respondeat superior).

674 Fed. Appx. at 702.

Similarly, in *Doe v. USD No. 237,* No. 16-2801-JWL, 2019 WL 5576929 (D. Kan. Oct. 29, 2019), the plaintiff, a high school student, alleged that a teacher and coach, Mr. Hutchinson, sexually harassed her. *The court explained that, to support a Title IX retaliation claim, a plaintiff must allege that the retaliatory acts were by the District or School Board or by a person with authority to address and correct the complained of discrimination:*

> Ms. Doe has not alleged any retaliatory acts by the District or the School Board or by any appropriate person with corrective authority such as the principal or superintendent. Rather, in support of this claim Ms. Doe only points to conduct by Mr. Hutchinson, the school counselor, coaches, a teacher, and her fellow students…. Therefore, *the Court concludes that if the alleged retaliatory acts were committed by a person other than the recipient itself or an appropriate person with corrective authority, the plaintiff must show the recipient's actual notice of and deliberate indifference to the retaliation against the plaintiff*.

2019 WL 5576929, at *10 (emphasis added).

In *Bose v. Bea*, 947 F. 3d 983 (6th Cir. 2020), a former student brought claims against her professor, Bea, who had accused her of cheating, and against Rhodes College under Title IX, which expelled her. She alleged that Bea had reported her to the Honor Council in retaliation for her

15

opposing his advances. The plaintiff asked the court to impute Bea's retaliatory motive to the college using a "cat's paw" theory of causation. The District Court refused to do so and the Court of Appeals for the Sixth Circuit affirmed, explaining:

> Title IX does not provide for individual liability; only "a recipient of federal funds may be liable for damages under Title IX" and "only for its own misconduct." *Davis v. Monroe Cty. Bd. of Educ.,* 526 U.S 629, 640, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999); *see also Soper v. Hoben*, 195 F. 3d 845, 854 (6th Cir. 1999). Accordingly, Bose asked the court to impute Bea's retaliatory motive to Rhodes using a "cat's paw" theory of causation, which links the discriminatory motive of one actor to the adverse action of another. The district court declined to do so, reasoning that the cat's paw theory depends on principles of respondeat superior and constructive notice that do not apply to Title IX claims.
>
> \*   \*   \*
>
> Cases since *Gebser* have reinforced its message: a "recipient of federal funds may be liable in damages under Title IX only for its own misconduct." *Davis*, 526 U.S. at 640, 119 S. Ct. 1661. Accordingly, it is inappropriate to use "agency principles to impute liability to [a school] for the misconduct of its teachers," *id*. at 642, 119 S. Ct. 661; liability instead requires that the institution itself be "deliberately indifferent to known acts of … discrimination," *id.* at 643, 119 S. Ct. 1661.

947 F. 3d at 988-990. *See also Feminist Majority Found. v. Hurley*, 911 F. 3d 674, 695 (4th Cir. 2018) (requiring plaintiffs at the pleading stage to plausibly "allege that they engaged in protected activity under Title IX" and "that - - as a result of their protected activity - - they suffered an adverse action attributable to the defendant educational institution" (citations omitted)); *Pogorzelska v. VanderCook Coll. of Music*, 442 F. Supp. 3d 1054, 1065 (N.D. Ill. 2020) (dismissing Title IX retaliation claim because the plaintiff failed to plead that the college's conduct, including its inactions, was intentional or based on a retaliatory motive).

Plaintiff has failed to allege that the College had actual knowledge of Professor Nartey's alleged retaliatory behavior. She has also failed to plausibly allege that the College acted with deliberate indifference. The timeline alleged by Plaintiff in the Complaint, if proven, would demonstrate exactly the opposite - that her grade appeals were all denied *before* she claimed that her exam grade was a result of retaliation. Instead, Plaintiff attempts to impute liability to the

16

College for Professor Nartey's alleged conduct under theories of respondeat superior or constructive notice. This is legally insufficient to state a claim against the College for retaliation under Title IX.

### IV. Plaintiff Has Sued The Wrong Defendant

Plaintiff's Complaint must be dismissed for failure to sue the proper party. The State of Florida has organized a "state system of schools, courses, classes, and educational institutions and services adequate to allow, for all Florida's students, the opportunity to obtain a high quality education," known as the Florida K-20 education system.  Fla. Stat. § 1000.01(3).  the College is part of the K-20 education system, and is also part of the Florida College System. See § 1000.21(3)(r) and § 1001.60(2), Fla. Stat.  Additionally, §1001.63, Florida Statutes, provides:

> Each Florida College System institution board of trustees is constituted a body corporate by the name of "The District Board of Trustees of (name of Florida College System institution) , Florida" with all the powers and duties of a body corporate, including the power to adopt a corporate seal, to contract and be contracted with, to sue or be sued, to plead and be impleaded in all courts of law or equity, and to give and receive donations. In all suits against a Board of Trustees, service of process shall be made on the chair of the Board of Trustees or, in the absence of the chair, the corporate secretary or designee of the chair.

(Underline in original, emphasis added).

Because the College is a part of the Florida College System, which is governed by Florida Statute § 1001.63, a legal action against a member of the Florida College System must be brought against The District Board of Trustees for that member institution. Consequently, this action must be dismissed for failure to sue the proper party.

### V. Plaintiff Failure to Allege Compliance With Pre-Suit Notice Requires of Fla. Stat. Sec 768.28(6) Warrants Dismissal

Plaintiff's Complaint fails to allege compliance with mandatory pre-suit notice requirements that are applicable to claims against a state college such as the College.   As a state college, the

College falls under the ambit of Florida's sovereign immunity statute. *See* Fla. Stat. §768.28(2) That statute prohibits a plaintiff from suing a state agency before satisfying specified pre-suit requirements:

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality, county, or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing

Fla. Stat. §768.28(6)(2022)

A complaint must allege compliance with this requirement," and a "complaint that fails to include such an allegation is subject to dismissal for failure to state a claim." *Perkins v. City of Jacksonville Beach*, No. 3:06-CV-486-J-33MCR, 2007 WL 1796269, at *2 (M.D. Fla. June 21, 2007) (citing *Menendez v. N. Broward Hosp. Dist.*, 537 So. 2d 89, 91 (Fla. 1988)). This requirement extends to claims under Title IX. *Doe ex rel. Doe's Mother v. Sinrod*, 90 So. 3d 852, 856–57 (Fla. 4th DCA 2012) (affirming dismissal with prejudice of multiple claims, including a Title IX claim, because plaintiff "did not comply with the applicable time limitations, nor did she satisfy the pre-suit notice requirements" of Fla. Stat. § 768.28(6)); J*anie Doe 1 ex rel. Miranda v. Sinrod,* 117 So. 3d 786, 790 (Fla. 4th DCA 2013) (noting Plaintiff's satisfaction of pre-suit notice requirements before filing Title IX claims). The Complaint fails to contain any allegations that Plaintiff satisfied the pre-suit notice requirements of Fla. Stat. § 768.28(6). (See Compl.) Therefore, the Complaint should be dismissed.

### VI. Plaintiff's Prayers For Punitive Damages and Emotional Distress Must Be Stricken

It is well-settled that punitive damages are not available in Title IX private actions. that Title VI precludes punitive damages awards. *Doe v. Sch. Bd. of Miami-Dade Cnty.*, 403 F. Supp.

3d 1241, 1269 (S.D. Fla. 2019) (*citing Barnes v. Gorman*, 536 U.S. 181, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002)). *Also see* §768.28(5)(a)(The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages.)) As such, Plaintiff's prayer that this Court award punitive damages (DE 1, p. 10, ¶ 5) must be stricken.

Plaintiff's prayer for "additional compensatory damages for the embarrassment, anxiety, humiliation, and emotional distress" (DE1, p. 10, ¶ 4) must also be stricken. The United States Supreme Court recently held that "emotional distress damages are not recoverable under the Spending Clause antidiscrimination statutes we consider here." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1576, *reh'g denied,* 142 S. Ct. 2853 (2022). The Court in *Cummings* specifically listed Title IX as one of the "Spending Clause antidiscrimination statutes" to which it applies. *See id*. at 1568. As such, emotional distress damages are not available for Plaintiff's Title IX retaliation claim and must be stricken.

## CONCLUSION

For the reasons stated herein, The District Board of Trustees of Palm Beach State College, Florida requests that this Court dismiss Plaintiff's Complaint in its entirety, with prejudice, and award any other relief that it deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by electronically filing with the Clerk of the Court using CM/ECF on July 15, 2022, on all counsel or parties of record on the Service List below.

/s *Suzanne A. Singer*
SUZANNE A. SINGER
Florida Bar No.: 0946222
E-mail: ssinger@rumberger.com
MELISSA I. SOFTNESS
Florida Bar No.: 98786
E-mail: msoftness@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
Brickell City Tower, Suite 3000
80 Southwest 8th Street
Miami, Florida 33130-3037
Tel: 305.358.5577
Fax: 305.371.7580

Attorneys for Defendant

**SERVICE LIST**

Gregory S. Sconzo, Esq.
Samantha L. Simpson, Esq.
Sconzo Law Office, P.A.
3825 PGA Boulevard, Suite 207
Palm Beach Gardens, FL 33410
Tel: (561) 729-0940
Fax: (561) 491-9459
greg@sconzolawoffice.com
samantha@sconzolawoffice.com
natalia@sconzolawoffice.com

Attorneys for Plaintiff